FILED
RICHARD W. NAGEL
CLERK OF COURT

2018 AUG 17 AM 10: 08

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 513-578-4046 (SPRINT CORP.) | CASE NO. **1:18MJ-492**<br><br>**UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Anthony D. Peters, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **513-578-4046** ("**Target Telephone**"), whose service provider is Sprint Corp., a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, KS 66251. The targeted cell phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Task Force Officer with the Federal Bureau of Investigation (FBI), and have been since May 2014. I am also a Cincinnati Police Officer and have been since March 2004. I have conducted investigations into criminal enterprises, narcotics investigations, organized crime, and violent crimes to include the unlawful possession, possession with the intent to distribute, and actual distribution of controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

3. Your affiant has also participated in the execution of federal search warrants and federal arrest warrants in relation to these investigations. Additionally, your affiant has

participated in the installation and monitoring of tracking devices for vehicles in order to determine the whereabouts of believed drug traffickers and their illicit merchandise. Your affiant has also been involved with the monitoring responsibilities of Title III Wire intercepts, and analysis of pen registers related to narcotics and gang investigations. Your affiant is familiar with their methods of concealing the whereabouts of their illegal drugs, the methods they use to keep law enforcement officers from finding evidence of drug trafficking operations as well as the methods they use to prevent others unfamiliar with their criminal conduct from observing things indicative of drug trafficking. Your affiant is also familiar with the evasive nature surrounding most drug traffickers and the common ways in which wholesale drug distributors attempt to conceal their assets, their purchases, and other financial dealings that could be traced to them.

4. Through my training and experience I am aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard hard-line telephones, cellular telephones and digital display paging devices, or use of multiple telephones or other devices, to avoid detection by law enforcement.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 United States Code, Sections 1071, Concealing Person from Arrest, have been committed, are being committed, and will be committed by AMANDA KIRICHUK, and other as-yet unknown individuals. There is also probable cause to believe that the location of **Target**

**Telephone** will constitute evidence of this criminal violation, and will lead to the identification of individuals who are engaged in the commission of this offense.

## PROBABLE CAUSE

7. The Cincinnati FBI has been investigating the JOHN MOORE Drug Trafficking Organization (JMDTO) since June of 2011. As well, the JMDTO has been identified as a source of supply for multiple other DTO's involving drug and gang investigations by the Cincinnati FBI since that time. Throughout the course of the investigation, RICARDO CAMPBELL has been identified as MOORE's "right hand man" and primary fentanyl, cocaine, and heroin distributor for the DTO.

8. In February of 2017, Title III interceptions were authorized in regards to voice communications taking place on the phone being utilized by CAMPBELL. During interceptions Agents overheard numerous conversations related to the sale of narcotics.

9. During the course of the Title III intercepts, Agents heard multiple narcotics related phone calls with RONNIE PARROTT who was utilizing 513-903-3760. On March 8, 2017, the Honorable Stephanie K. Bowman, United States Magistrate Judge, authorized the collection of precise location data pertaining to PARROTT's cellular telephone, 513-903-3760. Based on toll analysis, Agents believe PARROT stopped utilizing 513-903-3760 in April of 2017.

10. On February 7, 2018, PARROTT was charged in a multiple count indictment against the JMDTO for Conspiracy to Possess with intent to distribute fentanyl, cocaine, and heroin and a subsequent arrest warrant was issued for PARROTT on that date.

11. On July 2, 2018, through open source data base checks and investigative analysis, Agents identified telephone phone number **513-578-4046, (Target Telephone)**, to be utilized by

PARROTT's fiancé, AMANDA KIRICHUK. This was confirmed through telephone conversations between Agents and KIRICHUK who verified her identity after being contacted on the **Target Telephone**. KIRICHUK also stated that she was PARROTT's fiancé and that PARROTT was not guilty of the charges that he is currently wanted on, admitting to her knowledge of both the warrants and that he was actively evading law enforcement.

12. On July 13, 2018, a Greater Cincinnati Northern Kentucky Crime Stoppers tip (Tip ID: 208-H58135) was forwarded to the FBI regarding PARROTT's whereabouts. The anonymous tipster stated that PARROTT was residing at the CROSSLAND HOTEL (11457 Chester Rd. Sharonville, OH 45246) in Sharonville, OH, possibly Rm. 243, and had been staying at that location with the help of KIRICHUK.

13. On August 9, 2018, an anonymous tip was provided through the Federal Bureau of Investigation's (FBI) Public Access Line (PAL) stating that PARROTT was staying in multiple rooms at the CROSSLAND EXTENDED STAY HOTEL (11457 Chester Rd. Sharonville, OH 45246) with KIRICHUK. The tipster stated that PARROTT and KIRICHUK were staying under assumed names in order to remain anonymous, due to PARROTT's wanted status, when booking multiple rooms and switching them regularly. The phone number provided by the PAL tipster for KIRICHUK was the **Target Telephone**.

14. Since February 2018, Agents attempted to locate PARROTT without success. Multiple surveillances were conducted at PARROTT's permanent and temporary residences and interviews of previous neighbors and family members were also conducted in an attempt to locate PARROTT. Through investigative correspondence with KIRICHUK, both PARROTT and KIRICHUK are aware that PARROTT is wanted by the FBI.

15. Based on the foregoing, the investigative team believes KIRICHUK has used, and continues to use, the **Target Telephone** to assist PARROTT in evading law enforcement. KIRICHUK is fully aware of PARROTT's fugitive status and is taking deliberate steps to harbor PARROTT from the authorities. As detailed herein, investigators believe KIRICHUK uses the **Target Telephone** to misdirect law enforcement's effort to locate and arrest PARROTT.

16. The requested information will assist law enforcement in identifying the location of **Target Telephone**, which will identify the location of KIRICHUK, who has been staying with, traveling with, and harboring PARROTT, and ultimately assist Agents in effecting the arrest of RONNIE PARROTT.

17. Since this affidavit is being submitted for the limited purpose of securing authority for obtaining precise location information of a specific phone being used by the targeted, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are required to establish the necessary foundation for an order authorizing the collection of precise location information pertaining the **Target Telephone**.

18. Based on the aforementioned facts and reporting, I believe there is probable cause to show that Amanda Kirichuk is using **Target Telephone** to commit a federal offense and that the information requested will assist the Federal Bureau of Investigation in locating Ronnie Parrott and Amanda Kirichuk.

19. In my training and experience, I have learned that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known

as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

20. Based on my training and experience, I know that wireless phone companies can collect E-911 Phase II data about the location of the **Target Telephone**, including by initiating a signal to determine the location of the **Target Telephone** on Sprint Corp. network or with such other reference points as may be reasonably available.

21. Based on my training and experience, I know that wireless phone companies can also collect cell-site data about the **Target Telephone**.

## AUTHORIZATION REQUEST

22. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

23. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable

cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24. I further request that the Court direct the Sprint Corp. to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint Corp.. I also request that the Court direct Sprint Corp. to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint Corp. services, including by initiating a signal to determine the location of the **Target Telephone** on Sprint Corp. network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint Corp. for reasonable expenses incurred in furnishing such facilities or assistance.

25. I further request that the Court authorize the government to install and operate a cell-site simulator to obtain dialing, routing, addressing, and signaling information from the t **Target Telephone** to determine the location of the **Target Telephone**.

26. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of daytime hours. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is probable cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Anthony D. Peters
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on this 17 day of August, 2018.

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **513-578-4046, (Target Telephone)**, whose wireless service provider is Sprint Corp., a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, KS 66251.

2. Information about the location of the cellular telephone assigned call number **513-578-4046, (Target Telephone),** that is within the possession, custody, or control of Sprint Corp., including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the **Target Telephone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the target cell phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint Corp., is required to disclose the Location Information to the government. In addition, Sprint Corp. must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint Corp. services, including by initiating a signal to determine the location of the target cell phone on Sprint Corp. network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint Corp. for reasonable expenses incurred in furnishing such facilities or assistance. In addition the government may initiate a signal to determine the location of the target cell phone.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).